The Texas Supreme Court has held that this is a traditional, residential use of property. And the record in this case, and every other Texas case, has shown that Georgia rentals generally do not produce more disturbances or accidentalities than other residential uses. Nevertheless, the City prohibits my clients from engaging in this traditional practice while allowing hundreds of other property owners to do so, and while allowing far higher impact uses in the same neighborhoods. Starting at a general legal level, do you have any federal court that has ever struck down a City ordinance regulating short-term rentals that didn't act retroactively? So it wasn't taking any... Do you have any federal case, district, or circuit? No, Your Honor, we don't. So why is this case different? So, for a couple of reasons. First, there have only been three federal appellate courts that have dealt with short-term rental ordinances at all. Twice, this court in Marfil and Hicknall-Stark. Hicknall-Stark, of course, has struck down. Then you have the Netherlands case out of the Third Circuit, which is based on a different factual predicate and different arguments in that case. In Nekrolov, of course, they were dealing with secret motives based on Airbnb campaign donations. They didn't raise the sort of substantive due process and equal protection challenges that we raise here. Well, wait. I'm not sure that's right. In Nekrolov, the court said legislative acts are subject to rational basis review. That test is easily satisfied here, reducing deleterious effects on neighborhoods and protecting the residential character. So the Third Circuit seemed to have said exactly what you're saying isn't true. There's no rational basis between a short-term rental restriction and a city's desire to preserve the character of a neighborhood. I disagree. I disagree that that was the whole deal with the court because the plaintiffs in that case— But I just read it. I read that. Yes, but if you look at what he said, it's that the plaintiffs, the only substantive due process challenge they raised in that case was they believed that the mayor was biased based on higher campaign donations. They didn't dispute the residential character arguments made in that case. Had we not disputed those things, had we not put facts into the record, we would lose because rational basis is a very deferential test, but the rational basis test does not demand judicial blindness. And as this court recognized in Mahone, the rationality of a zoning ordinance necessarily turns on the local facts on the ground. And the local facts on the ground here matter. So you accept our Jackson Court precedent where we say, certainly the protection of residential integrity is a legitimate objective of zoning. Is your argument just on the facts here, it was arbitrary? Yes, that's right. Okay, and just digging down a little bit, is that because of the 30-29-day thing, or is it because there's a water park right next to one of—actually, your client, I think. The latter, Your Honor, primarily the latter. But that's what it was remanded. Judge Jones agreed, and you got your remand. It went back down, and then the maps were introduced, and the maps are pretty clear that the commercial district is completely segregated from the residential district. I don't think that's true. There's a haircut studio directly behind the Marples home. If you look at the Mooney deposition, there are four short-term rentals scattered in the neighborhood around where the Marples are. But more importantly, more importantly, the fact that you should have bought a water park— Well, wait. I spent some time looking at the record. I see the Marples home. I do see one short-term rental permitted. That's lot 595. But that was grandfathered. That one is grandfathered, and it shares the yard with Mr. Mathis' home. But if you look by the male Marples homes, those homes have four within a few hundred feet, and we discussed that at the Mooney deposition. We discussed that with their designated witness. Okay. Again, I'm looking at lot 415, 435. I mean, Judge Jones was right to send it back down. Those are the two next to the Marples, but those are in commercial. That's a commercial district. Well, let me address that. I think even if it were the case— and we don't agree with the characterization that there are no commercial uses in this neighborhood because there's a haircut studio behind us— but even if that were the case that they were all on the other side of the line, the city has never articulated a distinction between the Supreme Court's precedent and NetTow. In NetTow, the Ford Motor Company plant was on the other side of the zoning line, and the city argues exactly what the city argues here. That's on the other side of the zoning line, so we can't consider it. The Supreme Court in NetTow rejected that approach. It said it matters that the thing that's on the other side of the zoning line is the Ford Motor Company plant, and it matters here that the thing that's on the other side of the zoning line is Schlitter-Dahn Water Corridor. Now, we also disagree with the fact that— There's a big highway, all the commerce, the industry, and frankly, even apartments, all legitimate to do short-term rentals. But on the other side of the highway, or especially one block off it, you've got residential. But short-term rentals in Texas are a residential use. They're not a commercial use. In NetTow, they're trying to do a commercial use on the other side of the road. Is there not a profitability with a short-term rental, though? There's profitability with long-term rentals as well. That's not the way the courts have typically looked at residential use. The way you determine the use of the property is what's being done on the property. Are you bringing in customers every day? Are you manufacturing something? You're looking at the externalities that are created. You're not looking at whether or not it's designed to make money, because long-term rentals are likewise designed to make money. And what position is the court in? And frankly, when I first read the briefs in this case, I'm sympathetic to the right of the landowner. But I also recognize that we have a long tradition of zoning in metropolitan areas and elsewhere in terms of use of property, commercial zoning, residential, industrial, and so on. How would we make a determination that 30 days is not long enough, but 60 days or 90 days might be long enough? Six months is a pretty standard lease for a residence. How do we draw that line in terms of rational basis? I think that what you would say is when there's a residential use in residential areas, you would look at the facts on the ground to see if there's a reason to believe that use is more disruptive in terms of externalities that would undermine residence character than the other things the city already allows in the same area. And let me ask, too, since we're talking about, I think, correct me if I'm wrong, 2006 and 2011 are the operative dates for the city's enactment. Are we not limited to seeing what was on the table, what the city considered at that time? Would that be the rational basis? The rational basis would be something that the city acted on at the time they enacted the ordinance, correct? No, Your Honor. The rational basis of the test is broader than that. You actually look at whatever the facts are in the record now. Just as the city can bring up new things that weren't what it relied on when it passed the ordinance, we look at the evidence in the record as it exists today. So if they had enacted an ordinance that was fairly arbitrary at the time, that we don't want any houses that are painted blue in this area, and then later on, 10 years later, they became a particular reason why, I can't imagine one, why there might be a basis for wanting that. That's not part of our consideration. It seems to me the rational basis has to be something that is recognized at the time the city acts to zone. I certainly wish that that were true of the rational basis test. I would love to be able to box them in with what they said at the time, but unfortunately that's not the case on rational basis scrutiny. So we would look at the record as it exists right now, we're required to look at it, and I think really, when it comes to line drawing, the bigger problem that they have is there's no way to square it. Before you leave that point, because you were relying fairly heavily on Patel, and so again, reading from then-Justice Willett, Texas judges weighing state constitutional challenge should scrutinize government actual justifications of the law. What they really had in mind at the time. That's not federal law, and if it's not, what's your authority? In other words, how can we say what they did in 2006 is irrational because we're going to look at what's happening now in 2026? What's your federal authority for having just said that we test the rationality of something a city does with information as much as 20 years later in a different city? What's your authority? What's the case? The best case for that would be St. Joseph's. St. Joseph's Abbey? St. Joseph's Abbey, yes. No, but that was the casket cabal, as Justice Willett called it. They were operating the time that the state law was passed. That was contemporaneous. There was no evidence. Well, I'll just pivot then and say… No, don't pivot. You made a statement that we have lots of law federally that says you can impeach the rationality using later data from other cities. What is the federal case? It's not St. Joseph's Abbey. What's the case? All of those cases say that the government… Not all. What case? St. Joseph's Abbey. Not St. Joseph's Abbey because I know that case very well. You said it back in 1926. Nectow said it. All of the cases say that the government isn't bound by the things that were in the record at the time, and so the plaintiffs, therefore, aren't bound by the things that were in the record at the time. Under rational basis scrutiny, this court can make up new things from the bench today, and if that's the test for rational basis scrutiny… But the ordinance itself said we've had public hearings. We've been looking at this for five years. That's the 2006 ordinance and then the 2011 amendment. It says exactly as we said in Jackson Court so that we don't have litter and vandalism and noise from transient people, i.e. short-term rentals. So a couple of points on that. First and foremost, if we're based on record at the time, which we asked for in discovery, Mr. Looney testified that they had no data at the time the short-term rentals were produced. But Looney wasn't even employed. Looney was their designated witness to testify. But he wasn't there at the time. But the city is bound by their designated witness when we ask what was the evidence in the record that you relied on when passing the ordinance, and that was what he was designated to testify about. He said at the time that there was no evidence that they had at the time or studies that showed that they produced more nuisances than long-term rentals. There was no evidence at the time that they affected housing affordability. There was no evidence in the record at the time that the ordinance was passed. So the complaint that they have from the people about Mr. Marfil's 4 a.m. party, that wasn't contemporaneous? That's an after-the-fact complaint? That's an after-the-fact complaint. That was after the ordinance was already in effect. It's 2019, isn't it? So it's years after. So that's your point. They can't use that data just as you or you both can. Right. If neither of us can look at the data, then the data is overwhelmingly good for us because by their own admission there was no evidence in the record that this residential use produces more externalities than other residential uses. Well, that could just be that it works. There are no complaints because the families aren't being troubled by short-term rentals. No, there aren't, because every single city in Texas that has looked at this, every court to look at this, whether it be the Dallas Court of Appeals or the Third Court… Well, but slow down. The Dallas Court of Appeals, and you correct me if I'm wrong, every single case you cite involved short-term rentals that are taking away vested interests. That 28J case, like every other case, what's been taken away are property owners who were renting before the ordinance, and therefore there's no grandfather. But New Brunsfield reads all that law and they make sure that nobody who already was renting doesn't still have the right to rent. Okay, so a quick point on that. That approach to the rational basis test applies directly in the case of Cleaver. Cleaver involved a zoning ordinance that was already on the books when the property was purchased, and rational basis certainly still applied. You still looked at the externalities in that case to determine whether or not… Right, I agree rational basis absolutely applies, but my point is you don't have any authority for any federal or state case ever to have stricken as violent of a rational basis when the short-term rental ordinance isn't implicating vested interests. You know, it is vested in the sense of the way that property rights work. The vested rights cases come from three lines of cases in Texas. One of them involves whenever you're trying to do a preliminary injunction in a criminal ordinance and it goes back to state versus morales. It's a complicated court of Texas law that's not relevant here. The other one involves when you're bringing a retroactivity claim under Article I, Section 16. In those cases, you do have to show a pre-existing use because it's a retroactivity claim. But there's not a single case that says you can't bring an Article I, Section 19 claim for a pre-existing ordinance. This court applied Article I, Section 19 to a pre-existing zoning ordinance this year in Money v. San Marcos, and it rejected the exact same arguments that the city raised here because they made the same arguments in that case. So people can move into a residential area that already has this restriction and then they can illegally do it, which I take it you agree Marfil did do it. He rented illegally. Then he loses in front of the city council. They could jump into federal court and say, even though I knew about the ordinance, they've taken my property interest? Yes, Your Honor, because under Wheeler, you have a right. That's from this court, the Wheeler case. You have a right to be free from irrational zoning ordinances that fall outside the police power, and that's all we're asking for here. So when could, under your theory, when could a city anywhere in Texas ever limit locations of short-term rentals? It would depend. Under this court's precedence, like Mahoney, it would depend on the facts on the ground. Describe facts where they could. If you had a particularly closed-off community, perhaps, if there was facts on the record that it was disrupted, that there were unique characteristics about that neighborhood that perhaps would justify it, then you could potentially have a rational basis. But you don't have a rational basis across the state from the largest water park in Texas. You don't have a rational basis when every single study in the state of Texas states these are residential uses that don't produce more exonalities than other residential uses. In fact, the other side's argument is the more radical argument here. All we're asking this court to do is apply the facts on the ground to the neighborhood at issue. Their argument, their view of residential character, their view of the rational basis test would make every short-term rental van in the country per se rational, and perhaps every zoning ordinance in the country per se rational, if you take their court argument seriously. And that's a far more radical position. Thank you. How much time did you say for rebuttal? Five. Five. Thank you. Lost my little paper. You'll tell us your name. Mr. Green. Mr. Green. Yes, ma'am. Please, the court. Brian Green on behalf of the Appalachian City of New Braunfels. The summary judgment evidence here proves that New Braunfels' prohibition of new short-term rentals in single-family and two-family residential districts is rationally related to promoting the residential character of those neighborhoods, preserving the availability of affordable housing in the community, and minimizing nuisance activity, particularly transient nuisance activity. If this court agrees that appellants have failed to negate even just one of those three rational bases in the summary judgment. But you came up and the prior panel said they're going to get some discovery. So maybe just tell us, what did the discovery show? And I guess critically, given my pointed questions to opposing counsel, did you introduce any evidence that was contemporaneous with the ordinance showing any of the nuisances described? So multiple issues there. Number one, I agree with the appellant's counsel that they get to argue the law is irrational based on the facts on the ground now. We're not confined to supporting the law based on rational bases in 2006 any more than they're confined to arguing about if we can negate it based on 2006. And that's the rational basis test. You've got Heller federal law. You've got – but basically – and one of the key aspects of that is it only needs to be reasonably conceivable. So if our rational basis only needs to be reasonably conceivable, we don't have to worry about what's actually talked about. Could the preamble to the ordinance suffice? The preamble, well, they can negate that. If they have the burden to negate, and if we put in a preamble something that evidence proves they were just completely wrong about, and in fact would be utterly irrational to conclude that that's true, well, then they get to put on that case. And my point on summary judgment is they have not negated. They cannot negate any of these three rational bases. I want to talk about Marker 1 because that's important. The court did not, in Marker 1, reject any of our legitimate bases or reject that this law was rationally related. Under Mahone, the question is when do you decide these issues on motion to dismiss versus motion for summary judgment? And one of the key factors is what is the state of the knowledge of the court? And if the court believes that it does not have sufficient knowledge to make that decision, then it remands for summary judgment. That's what happened. And so it doesn't confirm, deny anyone's claims, defenses. All we know is that particular panel, two out of three judges, believed we need a record. We don't have the knowledge. But it sounds like Marker 1 is concerned with facts. That's right. Discovery. We need facts in the record. We can't just evaluate the plaintiff's claims based on some ethereal notions of good government and quiet neighborhoods and good neighbors. We need facts to be developed. So tell us again, I want to go back to, as I understood Judge Higginson's question, what in the record exists now that supports your argument that wasn't there before the case came up the first time? So, first of all, as Judge Higginson was talking about the maps, there was a lot of discussion in the oral argument about this water park across the street. We demonstrated that it is a clear line between that water park and the commercial district and all of this residential neighborhood. There was also a question about how many short-term rentals are operating there. We now know it's just one in one of the neighborhoods and zero in the other neighborhood. So those maps show that this is, in fact, a residential neighborhood. It's not some place where residents can't thrive. It's not some place where the only people who want to live there or, excuse me, who want to be there are short-term tenants. Number two in the record, we have the neighbor's comments, and that's critical because for the first time in this case, we have in the record what the people think who actually live there. So this sort of concept that, no, this is not a residential neighborhood. It's right across the street from the water park. Let's ask the people who actually live there day to day. People, some of them, have lived there for 48 years, and what they all said was this is a quiet residential neighborhood. We are families with children. Don't let this commercial creep happen. And so they have to negate that character, and plaintiffs don't live there, by the way. Plaintiffs don't live in those neighborhoods. No one in this courtroom lives in these neighborhoods to be able to say this is what the neighborhood is like. Well, other than the 2019 all-night bash, what other evidence do you have of conduct by short-term lessees that impact or that justify the ordinance prohibiting? Well, remember, there's two different rational bases there, and the courts that have discussed this, including Jackson Court, Hickman-Stark, Necrolaw, all talk about those as different things. There's the residential character component, and then there's also the nuisance activity component. Well, I'm asking specifically about the nuisance activity. That's exactly right. Is there anything other than that one instance? Not for that specific neighborhood. For the nuisance rational basis, the evidence we're relying on are the studies that are cited to and that are included in the record that compare short-term rentals to long-term rentals. That's what we're relying on for the nuisance. So when we're talking about residential character, I'm looking at the maps. I'm looking at what the neighbors themselves said, and I'm also looking, by the way, and this was not in the Record 80 the first time, the admissions of plaintiffs themselves, because not only when it was remanded, not only did they get to depose us and send the question of production to us, we also got to depose them and got a number of admissions. For instance, the fact that in the north one, one further away from Sheraton, you have two houses. They both admit they would love to live there long-term, right? And so that shows the residential character. That shows the absence of any sort of nuisance conduct for the long-term residents. Now, the same sort of thing, right across from New Braunfels, Mr. Markle himself, while having engaged in building those short-term rentals, admitted that he could also see himself living there. So those things keep appellants from being able to negate the fact that this is, in fact, a long-standing residential community that is worth defending from the inflow, against the inflow of short-term rentals. Would you agree with me that even though the 2006 ordinance and the 2011 amendment both speak about extensive public hearings, lots of research done, five years, nothing in the record tells us what came out of those. Agreed. Agreed. And that is... That's a problem, right? Well, that is probably one of the fundamental reasons why the rational basis gets to look at later events, because otherwise you would challenge a law that was passed in 1930, and because they didn't have any records left from 95 years ago, you get to just strike it down. That's why it's so important that we get to look at the rational basis that are reasonably conceivable as opposed to just confining yourself to the record of when the law was first passed. So that's important. But then what about... Then you don't disagree with their deposition of Mr. Looney, who said, actually, I've looked at it all, and there is no nuisance from this. He did not say that. And, in fact, because that was being implied from some of his testimony in the deposition, he put an affidavit where he clarified his various comments. So, for instance, they say that Mr. Looney said there was no data. What he actually said was he didn't know of any data. And so there were a whole lot of misconstructions of what Mr. Looney had actually testified to that we made sure that we put into the summary judgment record that those were contradicted, that those weren't, in fact, what Mr. Looney was trying to say. And so once we look at the actual summary judgment record, which includes what we put in, which includes the affidavit testimony, which includes their admissions, which includes the maps, and, critically, which includes the commentary by the very people who lived there, who said consistently, this is a residential neighbourhood with small children. Don't let this happen. And then, of course, Judge Engelhardt, like we alluded to, we have at least that one statement where there was this nuisance partying till 4 a.m. Remember, they had the verb, to negate. And if they wanted to put on a case that said there was also nuisance activity for long-term tenant owners, they could have tried to do that. They didn't. So we only have one evidence of a nuisance occurrence in that neighbourhood, and it was by a short-term tenant. That's undisputed. We have no evidence that there was similar nuisance activity by the long-term tenants in the area. You heard his concession that these could be rational if we were looking at small, gated communities. These laws would apply there. As, in other words, it could be rational if the city were to adduce sufficient facts that it's a very protected, insular community. Then that insularity can be protected. But here, the maps show that it just isn't that. It's got a water park near it. I think that's unfair to the residents who live there to say because you're not in this tight, gated community, you don't get to be protected from short-term renters. They have the same interest and the same rational interest in living next to people who actually live there, who reside there, who bring that residential character as opposed to short-term tenants. So there's no line that says if the neighborhood is small enough or gated enough, it gets to be protected from short-term rentals, but not if it's big enough, then it doesn't get to. That's not how the rational basis works. The rational basis test says there is, in fact, value to having a residential character, long-term residents in a community, the ability of neighbors to get to know each other, to raise children who know each other. One of the things that was admitted in their deposition testimony, I asked them, okay, name some of the people who live next to these houses. They couldn't. They knew people they lived next to. What about just my questions to opposing counsel on the legal landscape? Is there any federal or state court that has invalidated the type of ordinance that New Braunfels has adopted where they protect grandfathered interests on the basis that it's not rational, it's not legitimate? Not one. Not one case has held that. Does the Third Circuit neck law decision, is it on point or is it different? It's on point. That paragraph that Your Honor read, that was directly on point, and then that court goes on to discuss the rebuttal that the account had, and the court rejects that, but that was after already saying these three legitimate bases are rationally connected to the law. So, no, neck law is absolutely on point. There is only one Texas case, by the way, that I'm aware of, a Texas state case, in which the court actually proceeded to apply a rational basis test to a short-term rental prohibition. That's the Drager case, Drager v. City of Arlington, and the court upheld that law under the rational basis test. The other Texas cases have been, Judge Higginson, like you said, have been in this context of retroactive laws. That's the Tiki Valley, the Zaatari case, the Great Vibrant Mounds. The Dallas short-term rental case actually involves the rational basis test, but that one, it turned out that the city of Dallas had failed to challenge the fact finding that there was no rational basis. And so the Dallas court did not need to undertake any sort of rational basis review because it was conceded that the ordinance failed rational basis. So Drager remains literally the only Texas appellate court that has actually done the analysis of rational basis to a short-term rental, and that approved of the ordinance and rejected the challenge. Does the analysis change at all if we view it as an as-applied challenge under either federal or Texas state constitution? Your opponent mentioned the Money case, and of course that one involved, to a large degree, the Texas Constitution on property rights. And that's the whole point, I think, of putting into the evidence the zoning maps in these specific neighborhoods, the commentary of the neighbors in these specific neighborhoods, the deposition testimony of the plaintiffs about those specific neighborhoods. The whole point of that was to address the as-applied nature of these claims. I think facially it's clear. I think facially you get to regulate, prohibit short-term rentals in a single-family or two-family. The question is, as applied, is there something about this neighborhood that would change that? If the water park had been in the R2 area as opposed to into a commercial area, that would be a significant arbitrary fact. I think that's right. I think also if it were in the middle, even if it wasn't zoned in R1, R2, but it was commercial, but it was just there with just a small neighborhood surrounding it, that would be a significant fact. But that's not what we have. What we have is a clear demarcation. The three or four short-term rentals by the Marcos are all in the red commercial district. The water park in that also, the kind of salmon color that's shown in the map, but it's also commercial, but everything stretching out away from that is residential. The idea of like a, I think it was a hair studio or something, that's not a business establishment. That's the type of thing you see when a neighbor decides they're going to do something out of the home, so they plop it onto Google Maps. That is not actually a business establishment. Importantly, since they have a burden, there was no evidence to indicate that that had any sort of commercial character that would cause the residential nature of that neighborhood to be harmed in any way. One of the interesting things about this case, I think, is the nature of the studies that were put into the record about the nuisance, and they say that those studies prove that they negated it, and yet, in my brief, I went point by point explaining that actually those studies do the opposite. They prove that it is at least debatable to regulate short-term rentals. When you actually look at the data, for instance, the Dallas one, when you actually look at the data, once you put a short-term rental into a neighborhood, 911 calls increased by 66%, and 311 calls increased by 42%. That makes it at least debatable that the cause for that increase is, in fact, the short-term rental. Now, the author of that said... But isn't it also true, I hear your point, but isn't it also true that an ordinance like this sweeps in responsible homeowners with no complaints at all, while exempting other uses that may create identical or even greater impacts? That is true. This line can be under-inclusive and it can be over-inclusive. And the way the rational basis test works is the line gets to be both as long as there is, in fact, a rational basis for that connection. And that's what we have here. So you don't disagree that the city certainly could have considered less restrictive measures, it could have considered density caps, it could have considered nuisance enforcement that would target bad actors directly, instead of a more blanket or categorical approach. That's right. And that's the sort of policy decision that the city gets to make. It gets to make that decision of do we want to ban it outright, or do we want to allow it with restrictions. And what's interesting about this case in the city of New Brunswick, you have appropriate mortgages and short-term rentals across the building. We didn't do that. If it's a commercial district, you can have short-term rentals. If it's a mixed-use, you can have short-term rentals. If it's a multi-family, you can have short-term rentals. And so, because of that, as appellants can see, there's over 700 short-term rentals operating in the city, and those are generally operating in those other areas where the city of New Brunswick has decided as a policy matter that the residential nature of that neighborhood matters most to the single family and the two-family. Now, that's not as a matter of law. I'm not going to say that someone who lives in an apartment complex is somehow lesser as a residential person, but the city gets to make those sort of policy decisions. That's the whole point of the rational basis test, is we're not a super legislature in the courts where we're saying, I sure would draw that line differently. That's not the point. The question is, is the line that was drawn, is that rationally related to a legitimate governmental interest? And we haven't even gotten to the third one, which is affordable housing, and that's the type of thing where if they wanted to negate that, they really needed to get an expert witness to negate that, to show that the contrary of the simple concepts of supply and demand, removing these houses from the long-term rental market is going to impact the availability of affordable housing. They just didn't negate that. So on all three of these legitimate bases, the appellants have failed to negate the rational basis of whether it's facial, whether it's as-applied, whether it's U.S. constitution, whether it's tax law. The only sort of question left over, and I think this easily passes the rational basis test, the only question left over is the Patel case. Judge Willey, you wrote a concurring opinion in that case. There are multiple problems with that, but I'll just get to the heart. What I think is the heart of it is this sort of prohibition is not so purposeful as to be aggressive. They can still rent their houses long-term. They're still able to stipulate. They can still turn in companies, which is a far cry from the eyebrow threaders who have faced complete bans, full bans to the occupation of their choice. And just like there was no federal or state case that has applied the rational basis test to short-term rentals and found the ordinance wanting, the same thing, there has been no case that has applied the Patel oppressiveness test to an ordinance like this that has struck it down under Patel. Even if there's no case, as I've pressed several times, it's surprising there really may only be one, the Third Circuit case. R2, Jackson Court, and Higdell, in each case the ordinance was struck down. So I'm a little surprised that short-term rentals are everywhere in every city. Am I correct? There is only the Third Circuit decision that stands out. Yes, that's because like I said, Draper is the first case, the only case so far where rational basis has been applied at the court of appeals level. And I agree with you, I'm surprised there aren't more at this time with how litigious and contentious this is. Is it fair to say that our court, other courts too, but our court has been, we have steadfastly dodged the question of whether Patel applies in the non-occupational context? That is fair to say, and I would say so have the Texas courts. So far it's all dodged it. The closest I think it would come to is the recent Title Max case, but it ruled on based on vested and based on this is not the type of burden that would be invested. Thank you, counsel. We have five minutes of rebuttal.  Thank you so much. I just want to say a few things. I'll try to be real fast. So first, Draper is not the only Texas court case to deal with this. The Dallas church rental case is the most recent articulation from the Texas court. That involved the rational basis test, and Draper wasn't on a full record. Draper was a preliminary injunction that was rejected, and the same arguments that were raised in Draper were the same per se approach that this court rejected in Marker 1. He briefed the Draper issue in Marker 1. It wasn't successful then. It shouldn't be successful now. Second, to your point, Judge Willett, Patel, you know, since it's been decided they haven't applied it outside of that context, but Patel itself applied it, relied on zoning cases to articulate the undue burden test. The very first case that it cited was Mahan, which was a zoning challenge from the 1990s, and the oldest case that was cited in Patel for the undue burden test was the Milligan case, and the Milligan case involved the renting of rooms the very same right at issue that Patel applies. If his version of residential character were correct, Cleveland would have to go the other way. He says that residential character is based on whether you know your neighbors or how likely you are to join a hospital guild or Coach Little League, but the handicapped individuals staying in that group home in Cleveland were also less likely to know their neighbors or Coach Little League. That's not what the court looked at. Instead, the court said you have to look at traditional externalities like noise and crowding and trash and flooding, and because that use would not produce more crowding than the fraternity houses they already allowed in the same neighborhood, the court said that the zoning ordinance in that case was irrational. He has never even attempted to square Cleveland with this case. A quick point about the data. On the map, what's the equivalent of a Right behind the Marples home, there's an in-home bakery. That's on the Google Maps. You can look at it. Right down the street, there's an in-home haircut studio that has people coming in and out every day. Right behind the Marples home, you can see it on the Google Maps, and it's not a highway between their home and Schlitterbahn, by the way. I was just standing there yesterday, and you could throw a baseball into Schlitterbahn's parking lot. You could throw a baseball and hit a diner from the Marples front yard. It's worth actually looking at the Google Maps images of the things in these neighborhoods aside from short-term rentals. Very quickly, a quick point about the data with regard to nuisance. I invite this court to look at the studies themselves. If you look at the second page of the California study he pointed to, it says in bold lettering that short-term rentals would reduce the amount of nuisance complaints in the neighborhoods across seven California cities. The Dallas study, which is his very best study, the Dallas Court of Appeals in the Dallas District Court looked at that study at the District Court level and said that was not sufficient to provide a rational basis to ban short-term rentals in Dallas. If it's not sufficient to ban short-term rentals in Dallas, it's certainly not sufficient to ban short-term rentals across the street from Schlitterbahn. I think with regard to affordable housing, very quickly, the data in this case with regard to affordable housing, the only two Texas cases to look at affordable housing, the Zatari case and the Dallas short-term rental case, both said that short-term rentals have no effect on housing prices one way or the other. And the city has changed its position multiple times about whether it thinks it makes property values go up or makes property values go down. At the end of the day, what it's left arguing is it would prefer that those units be used for long-term family use, but the same thing was true in Cleburne, in Neptow, in Spann, and every other case that has struck down its zoning ordinance. The cities in those cases also said they would prefer that those properties be used for another use. That's not sufficient for rational basis. And then finally, I would just say, despite eight rounds of briefing in this case, he's never been able to distinguish Neptow. Neptow is a binding United States Supreme Court precedent, and we are far better situated than the plaintiffs in Neptow, because in Neptow they wanted to use their property for a commercial use, and the city said, well, it's in a residential area, you can't do it, but it was across the street from the Ford Motor Company plant, and that was sufficient to make the zoning ordinance there irrational. Here, we're trying to use our property for a residential use, and the record in this case shows that short-term rentals don't produce more nuisances than other residential uses, much less Schlitterbaum Water Park. And then just by remaining 30 seconds, I forgot to hit this with the data earlier, I apologize. It's telling that there are 748 short-term rentals in New Braunfels, and over a 10-year period, they cannot point to a single citation for a single confirmed nuisance at a short-term home. If that is not sufficient to rebut the government's claim that these things cause nuisances... But wouldn't that... again, that's back to my question of, if they're all in the industrial park, no one would be complaining. But they're not. There are two points on that. If you look at the map, they are in residential areas. They're grandfathered in residential areas, and they also provide exceptions under their ordinance. As long as you don't get neighborhood objections, Mr. Looney testified. They've allowed people to come in, and for any reason or no reason, they can approve or deny these permits, and allow people into these areas. And if you look at the maps... Yeah, we have the maps. Thank you. That's fine. Thank you, Counsel. I'm letting you go over a little bit. He won't have an answer. That case is submitted. We have one more case we're hearing today.